IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RUFINO VILLARREAL,<br><br>            Plaintiff,<br><br>vs.<br><br>TODD SCHMADERER, in his individual and official capacity; CITY OF OMAHA, a Municipal Corporation; and MARK MATUZA, in his individual and official capacity;<br><br>            Defendants. | 8:20CV403<br><br>**MEMORANDUM<br>AND ORDER** |

    Plaintiff, a non-prisoner, has been given leave to proceed in forma pauperis. (Filing 5.) The court previously conducted an initial review of Plaintiff's Complaint, finding that the Complaint failed to state a claim upon which relief could be granted. The court granted Plaintiff 30 days to file an amended complaint that sufficiently stated his First Amendment retaliation claim, and Plaintiff has now filed an Amended Complaint (Filing 7). The court now conducts another initial review of Plaintiff's claims to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2) (requiring the court to dismiss actions filed in forma pauperis if they are frivolous or malicious, fail to state a claim on which relief may be granted, or seek monetary relief against a defendant who is immune from such relief).

## I.  SUMMARY OF COMPLAINT

    Plaintiff sues the City of Omaha; Todd Schmaderer, Chief of the Omaha Police Department, in his individual and official capacities; and Mark Matuza, Captain of the Omaha Police Department, in his individual and official capacities for declaratory, injunctive, and monetary relief. Plaintiff sues the Defendants under 42 U.S.C. § 1983 for shooting him with rubber bullets and tear gas in retaliation for

engaging in a Black Lives Matter protest in Omaha, Nebraska, on May 31, 2020. During the protest, Plaintiff alleges there was a line of police in "riot militarized gear" facing the protestors. Plaintiff heard no audible commands, but noticed people backing up. Suddenly, "the police officers became very aggressive and attacked" Plaintiff and the other protestors. As he was filming the incident with his phone, Plaintiff was struck by rubber projectiles and gas as he was retreating. One of the bullets hit his hand, which caused it to swell "to the size of an orange." He also took four "shots" to the legs and suffered from "burning skin" and shortness of breath. Plaintiff underwent x-rays and treatment at the hospital. He still reports pain and numbness in areas of his hand, and he has sought counseling. Plaintiff claims this incident has had a "chilling effect" on him because he is "done" with protesting, and he now fears the police.

Plaintiff alleges that Defendant Schmaderer, Chief of the Omaha Police Department, supervises and controls the police force, and he "established the Police's response to protest activities." He further claims that Defendant Matuza is a "supervising officer of the Omaha Police Department who planned, approved, and executed the responses to my protest activities." (Filing 7 at CM/ECF pp. 5-7.)

## II. STANDARDS ON INITIAL REVIEW

The court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

### III. DISCUSSION

#### A. Claims Raised

Liberally construed, Plaintiff's allegations raise claims of retaliation under the First Amendment and excessive force under the Fourth Amendment.

#### 1. First Amendment Retaliation Claim

The First Amendment prohibits government officials from taking retaliatory actions against individuals for speaking out. *Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014).

> To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, the plaintiff must show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity.

*Id*. (internal quotations and citations omitted). "Under the third prong, a plaintiff must show that the retaliatory motive was a 'substantial factor' or 'but-for cause' of

3

the adverse action. In other words, the plaintiff must show he was 'singled out because of [his] exercise of constitutional rights.'" *Id.* (internal citations omitted).

## 2. Excessive Force

"An excessive force claim 'is governed by the Fourth Amendment's prohibition against unreasonable seizures,'" *Thompson v. Dill*, 930 F.3d 1008, 1013 (8th Cir. 2019) (quoting *Loch v. City of Litchfield*, 689 F.3d 961, 965 (8th Cir. 2012)), and "is evaluated under the reasonableness standard of the Fourth Amendment." *Coker v. Arkansas State Police*, 734 F.3d 838, 842 (8th Cir. 2013) (internal quotation and citation omitted).

To show a Fourth Amendment violation by the use of force, a plaintiff must establish (1) that he was "seized"[1] within the meaning of the Fourth Amendment and (2) that an officer's use of force was objectively unreasonable[2] given the facts and

---

[1] To constitute a "seizure" under the Fourth Amendment, there must be a willful or intentional application of physical force, as determined by the "officer's objective behavior," or the plaintiff's submission to the police officer's show of authority. *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1208 (8th Cir. 2013). A seizure must "restrain[ ] . . . freedom of movement," but the "restraint need not actually succeed in stopping or holding [the person] even for an instant." *Id.* (internal quotations, alterations, and citations omitted) (police officer's "bull rush" at plaintiff was "more than enough physical force to effect a seizure under the Fourth Amendment" (citing cases)).

[2] "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Samuelson v. City of New Ulm*, 455 F.3d 871, 875 (8th Cir. 2006) (internal citations and quotations omitted); *see also Rohrbough v. Hall*, No. 4:07CV00996, 2008 WL 4722742, at *4 (E.D. Mo. Oct. 23, 2008) ("The Court must consider factors such as the severity of the suspected crime, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting or attempting to evade arrest.").

circumstances of the incident as "judged from the perspective of a reasonable officer on the scene." *Bishop v. Glazier*, 723 F.3d 957, 961 (8th Cir. 2013) (internal quotation and citation omitted); *see also Atkinson v. City of Mountain View*, 709 F.3d 1201, 1209 (8th Cir. 2013).

### B. Defendants Schmaderer/Matuza in Individual Capacities

Plaintiff appears to seek to impose liability on Defendants Schmaderer and Matuza based on their supervisory positions as Chief and Captain of the Omaha Police Department. "It is well settled that § 1983 does not impose respondeat superior liability." *Hughes v. Stottlemyre*, 454 F.3d 791, 798 (8th Cir. 2006) (internal quotation marks omitted). To state a § 1983 claim, the plaintiff must allege that the defendant was personally involved in or had direct responsibility for incidents that resulted in injury. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (because there is no vicarious liability in § 1983 actions, a prisoner "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985).

"Supervisors can, however, 'incur liability . . . for their personal involvement in a constitutional violation, or when their corrective inaction amounts to deliberate indifference to or tacit authorization of violative practices.'" *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) (quoting *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993)).

Here, Plaintiff has alleged that Schmaderer and Matuza developed, directly authorized, and apparently did not stop, the practices of the police officers who intentionally and unreasonably shot Plaintiff with rubber projectiles and gas because of his peaceful participation in, and filming of, a protest. Plaintiff alleges facts suggesting that these practices, as executed by the police officers at the scene, would chill a person of ordinary firmness from continuing in such protests, and that the application of force against Plaintiff was motivated by his participation in the protest.

5

Broadly construing Plaintiff's pro se Amended Complaint, I conclude that Plaintiff has stated First and Fourth Amendment claims for relief against Defendants Schmaderer and Matuza in their individual capacities.

## C.  Defendants City of Omaha and Schmaderer/Matuza in Official Capacities

Plaintiff's claims against the City of Omaha and Defendants Schmaderer and Matuza in their official capacities are actually claims against the City of Omaha itself. *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent."); *Parrish v. Luckie*, 963 F.2d 201, 203 n.1 (8th Cir. 1992) ("Suits against persons in their official capacity are just another method of filing suit against the entity. A plaintiff seeking damages in an official-capacity suit is seeking a judgment against the entity." (citation omitted)). Therefore, such claims will be dismissed as duplicative of Plaintiff's claims against the City of Omaha. *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) (proper to dismiss claims against city police officer sued in official capacity as redundant of claims against city); *Eagle v. Morgan*, 88 F.3d 620, 629 n.5 (8th Cir. 1996) ("'[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.'" (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).

In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that a municipality (or other local government unit) can be liable under 42 U.S.C. § 1983 if an "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691. To prevail on a claim alleged against the City of Omaha, Plaintiff must show that the constitutional violation resulted from (1) an official "policy," (2) an unofficial "custom," or (3) a deliberately indifferent failure to train or supervise. *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016). Here, Plaintiff seems to be alleging that the City's policy, as developed and executed by Defendants Schmaderer and Matuza in their official capacities, caused a constitutional deprivation.

"Official policy involves 'a deliberate choice to follow a course of action . . . made from among various alternatives' by an official who has the final authority to establish governmental policy." *Jane Doe A By & Through Jane Doe B v. Special Sch. Dist. of St. Louis Cty.*, 901 F.2d 642, 645 (8th Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law," *Connick v. Thompson*, 563 U.S. 51, 61 (2011), because "[t]hese are action[s] for which the municipality is actually responsible." *Id.* (internal quotation marks and citation omitted).

"Although [a plaintiff] need not set forth with specificity the existence of an unconstitutional policy or custom at the pleading stage, he must nonetheless present some allegations, references, events, or facts from . . . which the court could begin to draw an inference that the conduct complained of . . . resulted from an unconstitutional policy or custom of the [City] or a deliberate choice by a decision-maker with final authority." *Cotton v. Douglas Cty. Dep't of Corr.*, No. 8:16CV153, 2016 WL 5816993, at *6 (D. Neb. Oct. 5, 2016). "Municipal liability will not attach unless individual liability is found on an underlying substantive claim." *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017) (internal quotation marks and citation omitted).

Liberally construing Plaintiff's Amended Complaint, and recognizing that Plaintiff need not specifically identify the existence of an unconstitutional policy at this stage, I conclude that the Amended Complaint alleges facts suggesting that Plaintiff's injuries resulted from the execution of a City policy permitting the use of excessive force against peaceful protestors.³

---

³ This and other conclusions reached in this initial review are only preliminary determinations based on the allegations found within the Amended Complaint. This is not a determination of the merits of Plaintiff's claims or potential defenses thereto. Plaintiff should note that in order to maintain his "policy" claim, Plaintiff will need

IT IS THEREFORE ORDERED:

1. Plaintiff's claims of retaliation under the First Amendment and excessive force under the Fourth Amendment against Defendants City of Omaha and Todd Schmaderer and Mark Matuza in their individual capacities shall proceed to service of process.

2. Defendants Todd Schmaderer and Mark Matuza in their official capacities are dismissed from this action as duplicative of Plaintiff's claims against the City of Omaha.

3. For service of process on Defendants Todd Schmaderer and Mark Matuza in their individual capacities, the Clerk of Court is directed to complete a summons form and a USM-285 form for such Defendants using the address "Omaha Police Department, 505 S. 15th St., Omaha, Nebraska 68102" and forward them together with a copy of the Amended Complaint (Filing 7) and a copy of this Memorandum and Order to the Marshals Service. **The Marshals Service shall serve Defendants Todd Schmaderer and Mark Matuza personally in their individual capacities at the <u>Omaha Police Department, 505 S. 15th St., Omaha, Nebraska 68102</u>**. Service may also be accomplished by using any of the following methods: residence, certified mail, or designated delivery service. *See* Federal Rule of Civil Procedure 4(e); Neb. Rev. Stat. § 25-508.01.[4]

---

to point to state or local positive law, or state and local custom or usage having the force of law, which would allow the court to conclude that Defendants Schmaderer and Matuza are responsible for final policymaking for the City. *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1215 (8th Cir. 2013).

[4] Pro se litigants proceeding in forma pauperis are entitled to rely on service by the United States Marshals Service. *Wright v. First Student, Inc.*, 710 F.3d 782, 783 (8th Cir. 2013). Pursuant to 28 U.S.C. § 1915(d), in an in forma pauperis case, "**[t]he officers of the court shall issue and serve all process, and perform all duties in such cases**." *See Moore v. Jackson*, 123 F.3d 1082, 1085 (8th Cir. 1997) (language in § 1915(d) is compulsory); Fed. R. Civ. P. 4(c)(3) (court must order that

4.  For service of process on Defendant City of Omaha, the Clerk of Court is directed to complete a summons form and a USM-285 form for such Defendant using the address "City of Omaha, Attn: City Clerk, 1819 Farnam Street, Omaha NE 68183" and forward them together with a copy of the Amended Complaint (Filing 7) and a copy of this Memorandum and Order to the Marshals Service. **The Marshals Service shall serve Defendant City of Omaha at <u>City of Omaha, Attn: City Clerk, 1819 Farnam Street, Omaha NE 68183</u>**. Service may be accomplished by using any of the following methods: personal, residence, certified mail, or designated delivery service upon the chief executive officer or clerk of the City of Omaha. *See* Federal Rule of Civil Procedure 4(j)(2); Neb. Rev. Stat. § 25-510.02.

5.  The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.

6.  Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint. However, Plaintiff is granted, on the court's own motion, an extension of time until 90 days from the date of this order to complete service of process. The Clerk of Court shall set a case-management deadline accordingly.

7.  Because this non-prisoner case is proceeding to service of process, and at the direction of the court, this case is removed from the pro se docket. The Clerk

---

service be made by United States Marshal if plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915). *See, e.g.*, *Beyer v. Pulaski County Jail*, 589 Fed. Appx. 798 (8th Cir. 2014) (unpublished) (vacating district court order of dismissal for failure to prosecute and directing district court to order the Marshal to seek defendant's last-known contact information where plaintiff contended that the jail would have information for defendant's whereabouts); *Graham v. Satkoski*, 51 F.3d 710, 713 (7th Cir. 1995) (when court instructs Marshal to serve papers for prisoner, prisoner need furnish no more than information necessary to identify defendant; Marshal should be able to ascertain defendant's current address).

of Court shall randomly assign new judges to this case and shall request a reassignment order from the Chief Judge.

DATED this 15th day of June, 2021.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf<br>
Senior United States District Judge